UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-61316-BLOOM/Valle

MAINSTREAM ADVERTISING, INC.,

    Plaintiff,
v.

MONIKER ONLINE SERVICES, LLC,

    Defendant.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Moniker Online Services, LLC's ("Defendant") Motion to Dismiss, ECF No. [20], Plaintiff Mainstream Advertising, Inc.'s ("Plaintiff") Complaint, ECF No. [1]. The Court has carefully reviewed the record, the parties' briefs, and the applicable law. For the reasons that follow, the Motion is granted in part.

### I. BACKGROUND

Plaintiff is an online advertising company that offers services in search engine optimization, email marketing, pay per click management, online media buying, and search marketing. Compl. ¶ 7. Plaintiff reaches an online audience through third-party internet search engines through strategic registration and acquisition of value-based and business-generating domain names. Once it acquires a desired domain name, it creates a site containing certain advertising content which includes links to goods and services and ultimately directs visitors to the site to Plaintiff's clients, and Plaintiff is compensated for that online referral. *Id.* ¶ 8. Plaintiff asserts that it has created "considerable goodwill" with regard to these domain name addresses

and online consumers have "come to rely on goods, services and related information provided within the source identifying web sites accessible from Mainstream's domain names." *Id.* ¶ 10. According to Plaintiff, it owns numerous federal registrations for its trademarks and services marks, including but not limited to, "Colo," the "Colo" logo, "Quicklaunch," and "mainstreamadvertising." *Id.* ¶ 11.

Around 2004-2005, Plaintiff engaged Defendant to acquire and host domain names for its online advertising business, including monetizing those domain names through placement of links and other content. *Id.* ¶ 9. The parties entered into a Registration Agreement, which Defendant updated in 2008 and 2013. *Id.* ¶ 12. Throughout their contractual relationship, Plaintiff has registered, hosted, and/or maintained hundreds of thousands of internet domain names through Defendant's registration and hosting services. *Id.* According to Plaintiff, in early 2012, Defendant entered the online traffic marketing business and has directly competed with Plaintiff in the online marketing space. *Id.* ¶ 18-19.

Plaintiff alleges that on January 2, 2016, Defendant notified Plaintiff that seventy-two (72) of its domain names, including colo.com, had been successfully renewed. *Id.* ¶ 20. On February 4, 2016, however, Defendant advised Plaintiff that it intended to seize a large number of Plaintiff's domain names because of an alleged outstanding balance owed to Defendant, and that if Plaintiff did not place sufficient money into its account to cover the domain renewals, Defendant intended to seize and/or drop additional domains. *Id.* ¶ 21. Plaintiff asserts that on March 17, 2016, Plaintiff advised Defendant it was "wrongfully" taking several of Plaintiff's domain names. *Id.* According to Plaintiff, Defendant initially confirmed a successful renewal in January 2016, but then seized domain names based on the position that they were not successfully renewed. *Id.* ¶ 22.

Plaintiff maintains that Defendant ultimately permitted approximately one-thousand (1000) of Plaintiff's domain name registrations to lapse without requisite notice. *Id.* ¶ 23. Plaintiff alleges that many of those registrations remained titled in Plaintiff's name, but possession and use of such registrations were transferred to Defendant's affiliate accounts, all of whom were Oversee.net, Inc.'s ("Oversee") subsidiaries or related entities. According to Plaintiff, as a result, "a consumer may believe that they are using a website owned by Mainstream, who appears to be the legal owner; however, Moniker or its affiliates are operating same." *Id.* ¶ 24. Plaintiff alleges that Defendant transferred beneficial use of a number of Plaintiff's domain name registrations to Oversee's subsidiary, Domain Sponsor, which then monetized the associated websites based upon Plaintiff's prior verified internet traffic history, despite the fact that ownership of the domain remains in Plaintiff's name. *Id.* ¶ 25. "Once acquired, . . . consumers who have traditionally visited and/or viewed these . . . websites . . . are confused and/or risk being confused as they are no longer able to acquire goods, information or services from Mainstream . . . but are instead forced to acquire similar and competing goods, information or services from Oversee (or its related subsidiaries, affiliates or business relations)[,]" risking confusion in the market and loss of "considerable goodwill" created by Plaintiff. *Id.* ¶ 26.

Plaintiff filed this action on June 17, 2016, asserting claims for breach of the Registration Agreement (Count I), breach of the implied covenant of good faith and fair dealing (Count II), conversion (Count III), unjust enrichment (Count IV), and violation of the Lanham Act, 15 U.S.C. § 1114 for trademark infringement (Count V). On June 28, 2016, Plaintiff filed a Notice of Voluntary Dismissal as to Oversee. ECF No. [10]. Defendant now moves to dismiss the

action for lack of subject matter jurisdiction because Plaintiff has failed to state a claim of trademark infringement—Plaintiff's sole basis for federal jurisdiction.

## II. LEGAL STANDARD

### i.  Rule 12(b)(6)

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, (2002). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D.

Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true." ); *Iqbal*, 556 U.S. at 678. A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

    ii.    **Rule 12(b)(1)**

A court may dismiss a complaint when it lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion takes one of two forms: a "facial attack" or a "factual attack." "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "A 'factual attack,' on the other hand, challenges the

existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing *Lawrence*, 919 F.2d at 1529); *see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.").

"[I]n a factual attack, the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not attach, and the court is free to weigh the evidence." *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999). That is, the court may look beyond the four corners of the complaint so long as they relate to jurisdictional issues, hear conflicting evidence and decide the factual issues that determine jurisdiction. *Lawrence*, 919 F.2d at 1529; *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). Further, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010). Based upon the arguments in the Motion, it appears Defendant challenges the existence of subject matter jurisdiction via facial attack.

### III. DISCUSSION

Defendant moves to dismiss this action for failure to state a claim and for lack of subject matter jurisdiction—namely, Defendant avers that the Complaint fails to state a cause of action for federal trademark infringement and, as federal question for violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, is the only basis alleged for jurisdiction, the Complaint fails to set forth subject matter jurisdiction.[1] Count V of the Complaint specifically alleges violation of 15 U.S.C. § 1114, which provides in relevant part,

---

[1] Plaintiff indicates in its response brief that it intends to amend its Complaint to assert jurisdiction pursuant to 28 U.S.C. § 1332.

>Any person who shall, without the consent of the registrant—
>
>>(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>>(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
>shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1).

"To prove infringement under 15 U.S.C. § 1114 of the Lanham Act, the holder of a registered trademark must show (1) that the infringer used the mark in commerce, without the trademark holder's consent, and (2) that the use was likely to cause confusion." *ITT Corp. v. Xylem Grp., LLC*, 963 F. Supp. 2d 1309, 1318 (N.D. Ga. 2013) (citing *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 934 (11th Cir. 2010) ("A successful cause of action for trademark infringement requires the evidence to establish that the infringer 1) used the mark in commerce, without consent; and 2) that the use was likely to cause confusion.")); *see also Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.*, -- F.3d --, 2016 WL 4010164, at *7 (11th Cir. July 26, 2016) ("Our case law makes it clear that, in order to prevail on a federal trademark infringement claim under § 1114, [plaintiff] had to demonstrate (1) that its marks had priority over [defendant's] marks, and (2) that [plaintiff's] marks were likely to cause consumer confusion."); *TracFone Wireless, Inc. v. Hernandez*, -- F. Supp. 3d --,

2016 WL 4131283, at *6 (S.D. Fla. July 21, 2016) ("To prevail on a cause of action for trademark infringement, Plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's trademark, such that consumers were likely to confuse the two.") (internal quotation marks and citation omitted). In Count V, Plaintiff alleges that

> Defendants, with the intent to deceive the general public, are using in commerce reproductions, copies and colorable imitations of Mainstream's federally registered "mainstreamadvertising," "colo" and "quicklaunch" trademarks and service marks in connection with the sale, offering for sale, distribution and/or advertising of websites in a manner that is likely to cause confusion, mistake or deception, leading the consuming public to falsely believe that Defendants' services and the services advertised on Defendants' websites, are the services of Mainstream and/or are sponsored or approved by or are connected with those of Mainstream.

Compl. ¶ 59.

Defendant argues that Plaintiff has failed to assert sufficient facts to support its conclusory allegations that Defendant infringed on its trademarks. Courts, however, have repeatedly found complaints to sufficiently state a claim on a motion to dismiss when the complaint alleges ownership and registration of the mark, that the defendants used the trademarks without authorization, and that the use caused confusion or mistake to the consumer. *See Wyndham Vacation Ownership, Inc. v. Timeshares Direct, Inc.*, No. 6:13-CV-195-ORL-28, 2013 WL 5289734, at *2 (M.D. Fla. Sept. 19, 2013) ("Defendants' materials were 'specifically designed to confuse consumers into believing that [Defendants'] business is affiliated with, sponsored by or otherwise authorized by Plaintiffs' and that Defendants' use of Plaintiffs' marks is 'likely to cause confusion or mistake or deception.' . . . Plaintiffs have sufficiently stated a cause of action under § 32(1)(a) to survive the motion to dismiss."); *VMM Enterprises, Inc. v. Welch*, No. 8:07CV1380T23TBM, 2007 WL 3202450, at *1 (M.D. Fla. Oct. 26, 2007)

("[Plaintiff] alleges that [defendant] uses without consent "the trade name 'Suddenly Slender, the Body Spalon' [and that the] Defendant's use of the name 'Suddenly Slender, The Body Spalon' is likely to cause customer confusion as to his affiliation with [plaintiff] [and] the origin of the services being provided . . .' . . . [Plaintiff] further alleges that [defendant's] action 'constitute[s] a dilution of the distinctive quality of the mark' . . . . [Plaintiff] sufficiently states a claim for trademark infringement"); *Disney Enterprises, Inc. v. Innis Bus. Corp.*, No. 8:06CV1240T24MAP, 2006 WL 2598356, at *2 (M.D. Fla. Sept. 11, 2006) ("In its complaint, Plaintiff alleges that Defendants have used its trademarks, without authorization, in their advertisements and that Defendants' use of these trademarks 'has and will cause the likelihood of confusion, deception and mistake.' . . . Since this is a motion to dismiss and the Court must view the complaint in the light most favorable to Plaintiff, this Court finds that Plaintiff has sufficiently alleged facts to support its trademark infringement claim. Whether or not Plaintiff can ultimately show that Defendants' use of Plaintiff's trademarks is likely to cause confusion, to cause mistake, or to deceive is an issue for the trier of fact or that can be raised in a motion for summary judgment."); *La Terraza De Marti, Inc. v. Key W. Fragrance & Cosmetic Factory, Inc.*, 617 F. Supp. 544, 546 (S.D. Fla. 1985) ("The Plaintiff has alleged in the Complaint, its ownership and the registration of the mark. The Complaint further alleges that the Defendant's use of the mark is causing confusion or mistake in the minds of the public and dilution of the quality of the Plaintiff's name resulting in irreparable injury to the Plaintiff's reputation and good will. . . . The Court finds that these allegations are sufficient to state a claim for relief under 15 U.S.C. § 1114(1) . . . .").

Here, Plaintiff asserts that it "owns numerous federal registrations for its trademarks and services marks, including but not limited to, 'Colo,' the 'Colo' logo, 'Quicklaunch' and

'mainstreamadvertising.' Compl. ¶ 11. Plaintiff has attached a copy of trademark registrations for "Colo" and the "Colo" logo with its Complaint. *See* Ex. A, ECF No. [1-1]. Plaintiff also alleges that Defendant has improperly taken and used—or transferred, *see infra*—several of Plaintiff's domain names, including those registered. *See* Compl. ¶¶ 22-24. Plaintiff further alleges that consumers who have traditionally visited or viewed these websites are subsequently confused or risk being confused, risking loss of considerable good will. *See id.* ¶ 26 ("Once acquired, . . . consumers who have traditionally visited and/or viewed these . . . websites . . . are confused and/or risk being confused as they are no longer able to acquire goods, information or services from Mainstream . . . but are instead forced to acquire similar and competing goods, information or services from Oversee (or its related subsidiaries, affiliates or business relations). This risks not only confusion in the market, but loss of considerable good will created by Mainstream's prior efforts at selecting value based domain names and posting distinctive content within those domain names."); *id.* ¶ 24 ("In essence, a consumer may believe that they are using a website owned by Mainstream, who appears to be the legal owner; however, Moniker or its affiliates are operating same."). Plaintiff has, in principle, stated a claim for trademark infringement pursuant to 15 U.S.C. § 1114.

Defendant, however, argues in its reply brief[2] that paragraphs 25 and 26 of the Complaint suggest that Defendant "transferred" the domains to Oversee, who, in turn, made the alleged use of the marks, and therefore Plaintiff's claim "can at best be termed one for contributory infringement and not direct infringement." Reply, ECF No. [41] at 3.[3] Because the Complaint

---

[2] "Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived." *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009).

[3] "'To be liable for Contributory Trademark Infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied.'" *Coach, Inc. v. Swap*

originally named two defendants, it is unclear which allegations are aimed directly at Defendant and whether Plaintiff intends to assert a claim of direct or contributory infringement against Defendant. "When multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually. . . . [Notably,] under the liberal requirements of notice pleading, no technical forms of pleading are required." *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997) (citing Fed. R. Civ. P. 8(a)) (internal quotations and modifications omitted). However, "when a complaint alleges that multiple defendants are liable for multiple claims, courts must determine whether the complaint gives adequate notice to each defendant." *Prushansky v. Brown*, 2013 WL 3716398, at *3 (M.D. Fla. July 15, 2013) "Accordingly, at times, a plaintiff's 'grouping' of defendants in a complaint may require a more definite statement." *Ramos v. Cty of Miami Dade*, 2012 WL 3962436, at *3 (S.D. Fla. Sept. 10, 2012) (citing *George & Co. v. Alibaba.com, Inc.,* 2011 WL 6181940, at *2 (M.D. Fla. Dec.13, 2011)). "Indeed, a complaint that lumps all the defendants together in each claim and provides no factual basis to distinguish their conduct fails to satisfy Rule 8." *Id.* (citing *Lane v. Capital Acquisitions & Mgmt. Co.,* 2006 WL 4590705, at *5 (S.D. Fla. Apr.14, 2006)). Plaintiff would be well-advised to clarify this as well as whether it asserts a claim of direct or contributory infringement, or both, against Defendant, and to sufficiently state a prima facie claim thereof. Accordingly, Defendant's Motion to Dismiss is granted on this basis and Plaintiff is granted leave to amend to correct the deficiencies stated herein.

---

*Shop, Inc.*, 916 F. Supp. 2d 1271, 1278 (S.D. Fla. 2012) (quoting *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007)).

Case No. 16-cv-61316-BLOOM/Valle

## IV. CONCLUSION

For the reasons stated above, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss, ECF No. [20], is **GRANTED IN PART**. Plaintiff shall submit an amended complaint on or before **September 19, 2016**. Defendant shall respond to the amended complaint on or before **October 3, 2016**.

**DONE AND ORDERED** in Miami, Florida this 12th day of September, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record